MORRIS (BARRON v.). See Case No. 9,828.

MORRIS (BOWDEN v.). See Case No. 1,715.

MORRIS (BOWERBANK v.). See Case No. 1,726.

## Case No. 9,828.

MORRIS et al. v. BRUSH.

[2 Woods, 354;[1] 14 N. B. R. 371.]

Circuit Court, W. D. Texas. June Term, 1876.

BANKRUPTCY— APPEAL — ACTION TO SET ASIDE CLAIM OF CREDITOR—MOTION TO DISMISS APPEAL—TRANSCRIPT—TIME FOR FILING.

1. A proceeding in the district court in the nature of a suit in equity, brought by the as-

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

signee and creditors of a bankrupt to set aside the claim of an alleged creditor, and to abrogate the lien asserted by him on the bankrupt's property, is appealable to the circuit court under section 4980 of the Revised Statutes.

2. A compliance with general order in bankruptcy 26, in relation to the time of filing such appeal in the circuit court, is not necessary, to give the court jurisdiction.

3. But the order mentioned is a rule of practice in the circuit court, and if disregarded, the appellee has prima facie ground on which to move to dismiss the appeal.

4. A transcript of the proceedings of the district court is not required to be filed within the ten days prescribed for filing the appeal in the circuit court, but only a statement of appellant's claim and a brief account of what has been done in the district court and the grounds of appeal.

5. Where the decree of the district court disallowing a claim against a bankrupt estate was entered on January 21st, notice of appeal given January 27th, and the appeal bond filed in the clerk's office of the district court on January 28th; and before the next term of the circuit court, but not until May 22d, the declaration of appellant, setting forth his claim and the history of the proceedings was filed in the circuit court, at which time a transcript of the proceedings in the district court, was also filed, *held* that the circuit court had jurisdiction of the case and could hear it or not in its discretion, according as it might or might not be satisfied with the excuse offered for the delay in filing the papers.

6. A district judge sitting in the circuit court may in a proper case enlarge the time for filing an appeal in the circuit court.

This cause was heard upon the motion of plaintiffs, the appellees, to dismiss the appeal.

2 [The appellee James B. Morris was duly elected assignee in bankruptcy of one Philip Dei, against whom a petition for adjudication of involuntary bankruptcy was filed on the 2d day of June, 1874. Among the debts proved against said estate was an alleged secured debt in favor of one S. B. Brush, who died pending the litigation, the appellants becoming his personal representatives. The assignee applied to the district court to have the proof of debt rejected, under Rev. St. § 5081, upon the following grounds: (1) Because of a fraudulent preference under Rev. St. § 5021. (2) Because of a fraudulent preference under Rev. St. §§ 5128, 5129. (3) Because both of said trust deeds were void, having been executed to defraud and delay the other creditors of the bankrupt. (4) Because of an alleged partnership between the bankrupt and Brush. (5) Because trust deed of March 12, 1874, was waiver of trust deed of May 12, 1873. Certain unsecured creditors also filed a like application, based upon the same grounds, and also because certain enumerated carriages, etc., of the alleged value of five thousand dollars and over, in the trust deed of May 12, 1873, were sold and removed by the bankrupt, with the consent of Brush, and, if not rejected, this amount should be charged to Brush on the secured claim. The assignee amended his application by setting up, as additional grounds for rejecting proof of debt: (1) That, from July 1, 1872, to March 12, 1874, the bankrupt was insolvent,

2 [From 14 N. B. R. 371.]

and that Brush knew it, and also had reasonable cause to know it. (2) That the bankrupt retained full control of all the property covered by these deeds of trust. The answer of Brush's representatives set up: (1) A denial of any knowledge of any insolvency of the bankrupt on the part of Brush. (2) That most, if not all, the property described in the trust deed of 12th of May, 1873, was sold by Brush to the bankrupt, the trust deed being taken to reserve the purchase money. (3) That it was agreed, from the commencement of their dealings in 1872, that Brush was to be secured by deeds of trust on the bankrupt's property. (4) A denial of any partnership between Brush and the bankrupt. (5) That the trust deed of 1874 was a mere renewal of the trust deed of 1873, and did not affect the lien. (6) A further answer, in the nature of a cross action seeking to recover, from the assignee, the value of certain buggies, the property of Brush, and charged to have been converted, by the assignee, to the use of the estate. The assignee demurred to this last defense, as not a proper subject of inquiry in this proceeding. The cause was then tried, upon those issues, before the district judge, without a jury, and the following facts were proved: The bankrupt came to Austin in January, 1871, with little or no capital and credit, and commenced driving a hack, and bought carriages and harness from Brush, the latter always requiring security. He opened a livery and sale stable in April, 1873, and sold and traded as his own the property described in the trust deeds, Brush relinquishing the lien whenever a sale was made. The trust deed of 1873 covered about all the property of the bankrupt, as did also the deed of 1874, and the greater portion of it the bankrupt originally purchased from Brush. Brush knew nothing of the debts owing by the bankrupt in Missouri and Illinois, before coming to Texas. The Texas indebtedness was small. The bankrupt was making money when the bankruptcy proceedings were instituted, and Brush had no reason to suppose that the bankrupt would not be able to pay all his debts in time; but he knew that the bankrupt had made debts to the amount of several thousands of dollars since coming to Texas, and that the property representing the greater portion of this indebtedness was included in the trust deed of 1874. A good deal of the property in the trust deed of 1873 had been sold before the deed of 1874 was made. The latter covered the property in the deed of 1873 still undisposed of, and also such other property as the bankrupt had acquired from Brush and others since the deed of 1873 was made. The proceeds of sales were sometimes applied to the secured indebtedness, and sometimes used in making cash purchases from Brush. There was no partnership between Brush and the bankrupt. The trust deed of 1874 was intended as a renewal of the deed of 1873, under the original agreement as to security between the bank-

rupt and Brush. The trust deed of 1873 was past due, and, on March 12, 1874, a settlement was had, and the bankrupt paid Brush in cash all he owed over the five thousand dollars, and made the deed of that date to secure that balance. The bankrupt valued his assets, at the time of the seizure by the marshal, at fifteen thousand dollars, and returned them in his schedules at about thirteen thousand dollars. The debts proved up against the estate, exclusive of Brush's secured claim, amounted to ten thousand five hundred dollars about. The amount realized by the assignee in disposing of the assets was eight thousand nine hundred and four dollars.

[On the 21st of January, 1875, a decree was entered sustaining the assignee's demurrer to the cross action of Brush's representatives, and disallowing and expunging the said debt, deeds of trust, and liens, and declaring them null and void. On the 27th of January, 1875, notice of an appeal from this decree to the clerk, the assignee, and the creditors mentioned in the application, was filed, and the service of notice was accepted on the same day. On the 28th of January, the appellants, J. B. Barron and W. B. Brush, executors of Brush, filed their petition for allowance of an appeal reciting the proceedings had in the cause, and praying for a transfer of the same "to the next circuit court of the United States for said Western district of Texas, at Austin, to be held on the first Monday in June, 1875," etc., etc. The district judge allowed the appeal on the same day, and required an appeal bond to be given in the sum of five hundred dollars. On the 28th day of January, 1875, citation was issued on said appeal, and service thereof was accepted by the assignee and creditors. The appeal bond was filed on the 29th of January, 1875. A transcript of the record of said cause was filed in the circuit court on the 22d of May, 1875, as well as a declaration on appeal setting forth the facts relied upon by the appellants, and giving a general history of the proceedings in the district court, and praying for the relief desired, and the same was served on the appellee. On the 26th of May, 1875, the appellee filed a motion to dismiss the appeal, based principally on the ground that the declaration on appeal was not filed within the ten days prescribed by rule 26 in bankruptcy. No circuit justice or circuit judge held the circuit court until the June term, 1876, when the motion to dismiss was submitted.] [2]

Wm. M. Walton and James B. Morris, for the motion.

C. S. West and W. F. North, contra, who cited and relied on sections 4981–4984, U. S. Rev. St.; Bump. Bankr. (8th Ed.) 345; Baldwin v. Raplee [Case No. 802].

BRADLEY, Circuit Justice. [This is an appeal from the district court. The decree appealed from was made on the 21st day of January, 1875, upon the following case: Philip Dei was declared a bankrupt, upon a petition filed against him on the 2d day of June, 1874. S. B. Brush filed against the estate proof of a claim represented by two promissory notes for two thousand five hundred dollars each, dated February 12th, 1874, payable in ninety days, with interest at one and one-half per cent. a month, and secured by a trust deed given to Charles W. White, trustee, dated the 12th of March, 1874, and recorded in the Travis county records on the same day; the said notes being given in renewal of previous notes of a like or greater amount, dated 12th of May, 1873; and the said deed of trust being executed in place, and in renewal of, a former deed of trust, dated May 12th, 1873, given to secure the notes of the same date. The assignee of Dei, the present appellee, filed a petition in the district court praying to have the said claim of Brush disallowed, and the lien of the trust deed set aside, on the several grounds, generally summed up in the allegation, that the deeds of trust were made in fraud of the bankrupt laws, in fraud of the other creditors, and by way of fraudulent preference. Some of the other creditors also filed a petition of the same purport, and praying like relief. Brush having died, in the meantime, his executors, the present appellants, filed an answer sustaining his claim, and alleging that it was bona fide and just; also complaining that the assignee had taken possession of certain property belonging to Brush, which the bankrupt had in custody for sale on commission, worth to the amount of one thousand six hundred and sixteen dollars and eighty-seven cents, and had sold the same, and refused to return or account for the property or proceeds, and praying a decree for payment.

[The district judge made a decree disallowing the claim last set up, and declared the deeds of trust of May 12th, 1873, and March 12th, 1874, to be fraudulent and void, and disallowed and expunged the claim of Brush from the list of claims upon the assignee's record.] [2]

The nature of this proceeding was that of a suit in equity, brought by the assignee and creditors to set aside the claim of Brush and to abrogate the lien claimed by him on the bankrupt's property. In such a case an appeal clearly lies under section 4980 of the Revised Statutes. The motion now made is to set aside and dismiss the appeal, on the ground that the appeal was not filed in the clerk's office of this court within the ten days after taking the appeal in the district court as required by the general order in bankruptcy 26. It is not disputed that the appeal was claimed and notice thereof given to the clerk of the district court, and to the assignee and creditors, within ten days after the entry of the decree, and that a bond was duly filed as

required by section 4981 of the Revised Statutes. Nor is it disputed that the appeal was duly entered at the next term of this court, which was held after the appeal was taken, as required by section 4982 of the Revised Statutes. The facts are, that the decree was entered on the 21st of January, 1875, and notice of appeal taken on the 27th of January, and the appeal and bond were filed in the clerk's office of the district court on the 28th of the same month; but the declaration of the appellant, setting forth his claim and the history of the proceedings, was not filed in this court until the 22d of May, 1875, at which time the same was filed, together with a transcript of the proceedings before the district court, consisting of nearly two hundred pages. The next term of the circuit court was held on the first Monday of June, 1875, and after that, on the first Monday of January, 1876; but neither the circuit justice nor the circuit judge was present in the district from the time of taking the appeal until the present term, June, 1876.

The excuse offered by the appellant's counsel for not filing the appeal in this court until the 22d of May, 1875, is, that the proceedings were so voluminous that they could not obtain a transcript thereof at an earlier day; that they deemed the transcript a necessary part of the appeal; that no delay was occasioned in the progress of the case by their failure to file the appeal in January; and that the practice in this respect is uncertain. I think it clear that a compliance with general order 26, in relation to the time of filing the appeal in the circuit court, is not necessary to give this court jurisdiction. This was so held by Circuit Judge Woodruff in the case of Baldwin v. Rapplee [Case No. 802]. He considered the rule merely directory. As all the requirements of the statute were complied with in this case, the court has jurisdiction of the appeal, and can hear it or not in its discretion, according as it may or may not be satisfied with the excuse that has been offered for the delay. Although the rule is directory, merely, still it is the rule which governs the practice of this court, and if disregarded, the appellee has a prima facie ground of dismissal. And I think the counsel for the appellants is in error in supposing that the transcript of the proceedings in the district court is required to be filed within the ten days prescribed for filing the appeal in this court. It is not always in the appellant's power to compel an instant making out of the transcript. He may have to get orders from the circuit court as to what shall be certified, although it is the duty of the clerk of the district court to make it out with all convenient dispatch, when the proper conditions are complied with. What is required to be filed in the circuit court within ten days from the time of taking the appeal is the appeal, containing a statement of the appellant's claim, and a brief account of what has been done in the district court, and the ground of appeal. This is what is meant by the declaration in section 4984 of the Revised Statutes. This, in most cases, can easily be done within the ten days. But there has undoubtedly been some uncertainty in the practice. And, in view of this fact, and the fact that no injury could possibly arise from the delay in this case, as the court did not sit till June, and as there was no judge here who could hear the case; and as the delay does not seem to have proceeded from any desire to prolong the proceedings, I shall deny the motion to dismiss.

It is proper to observe, in conclusion, that I see no reason why the district judge, as judge of the circuit court, should not, in a proper case, enlarge the time for filing the appeal in the circuit court. This would be the better mode, when the parties are apprehensive that they will not have time sufficient to prepare the proper pleadings, as it would prevent applications to dismiss, and would restrain the attention of the parties to the merits.

[2][On June 17th, 1876, the cause was heard on its merits, before Hon. Joseph P. BRADLEY, and, after hearing the evidence, as above set forth, the opinion of the court was delivered orally, the judge observing that, in the absence of any actual fraud, the trust deed of May 12th, 1873, created a valid lien on the property described in it; that the fact that the bankrupt disposed of the property as his own did not vitiate the deed as to the other creditors, but was a matter that affected no one but Brush, and that the latter was not bound to apply the proceeds of the sales of the encumbered property to the secured debt; that the registration of the trust deed, in accordance with the laws governing chattel mortgages, took the place of delivery of possession, and took the case out of the statute of frauds; that the new notes and trust deed of March 12th, 1874, were not a satisfaction of the notes and trust deed of 1873, but merely a renewal of the same, and did not affect the validity of Brush's lien on the property embraced in the first deed of trust; that the deed of trust of March 12th, 1874, so far as it covered property not embraced in the former mortgage, was a prohibited preference, under the bankrupt law [of 1867 (14 Stat. 517)], but that the fact that this trust deed was void, so far as the original property was concerned, did not affect the lien on the property described in it, and also embraced in the valid deed of 1873; that there seemed to be a disposition on the part of district courts to consider all preferences and securities as contrary to the spirit of the bankrupt law, and to construe this branch of the law strictly rather than liberally; that this view of the law was not adopted by the supreme court of the United States; and that it had, in several recent cases, taken occasion to state that the object of the bankrupt law was not to dis-

---

2 [From 14 N. B. R. 371.]

courage vigilance on the part of creditors, except in particular and enumerated cases; but that the preferences and liens (except in those enumerated cases) were as much entitled to protection from the bankrupt courts as any other legal rights.

[Thereupon a decree was made ordering the assignee to pay to the appellants the net proceeds of the sales, made by the former, of the property embraced in both deeds of trust, and which came into his hands as assignee; and that said amount so paid be credited on the appellants' proof of debt, and that the same be ranked, for the amount of such balance, with the other unsecured creditors of the estate; and that each party pay his own costs.][2]